**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

TIMOTHY D. HOLDEN,

      Plaintiff,                        CASE NO. 05-CV-10057

v.                                 DISTRICT JUDGE THOMAS LUDINGTON
                                 MAGISTRATE JUDGE CHARLES BINDER

CITY OF SAGINAW, City of Saginaw
Police Detective Sergeant MARK LIVELY,
City of Saginaw Police Detective Sergeant
VAN BUREN, City of Saginaw Police
Officer JAMES ROBINSON, and City of
Saginaw Police Lieutenant MALLETTE,

      Defendants.[1]

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Dkt. 38)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for

summary judgment be **GRANTED.**

## II.    REPORT

### A.    Introduction

By order of U.S. District Judge David M. Lawson, all pretrial matters were referred to the

undersigned Magistrate Judge. (Dkt. 23.) Pursuant to Administrative Order 06-AO-027, the case

---

[1]Plaintiff Keva Holden was dismissed by Stipulation and Order filed August 14, 2006. (Dkt. 41.) Defendants Saginaw County, A. George Best, II, Auto Owners Insurance Company, Mr. McMartin, Mr. Wasek, Michael Thomas, Michael Dwan, and Diane Frost were terminated by Order Adopting Report & Recommendation and Granting Motions for Summary Judgment or to Dismiss filed on August 22, 2005. (Dkt. 23.) Defendants Paul Berg, Robert Ruth, James Vondette, James Massey, and James A. Vants were not named in the Amended Complaint filed February 22, 2006. (Dkt. 31.)

was reassigned from Judge Lawson to U.S. District Judge Thomas Ludington on September 12, 2006. (Dkt. 42.) The remaining defendants – Van Buren,[2] Robinson, Mallette, Lively and City of Saginaw[3] – filed a Motion for Summary Judgment on April 28, 2006. (Dkt. 38.) Plaintiff filed a response opposing the motion (Dkt. 39) and the defendants filed a reply to Plaintiff's response. (Dkt. 40.) After reviewing the documents submitted, I conclude that the motion is ready for report and recommendation without oral argument pursuant to E.D. Mich. LR 7.1(e)(2).

### B.    Factual Background & Plaintiff's Claims

The facts are largely undisputed.[4] On or about May 6, 2002, Plaintiff reported to the police that his home at 114 N. Granger in Saginaw, Michigan, had been broken into and vandalized. (Dkt. 38 at 1.) The damage was sufficiently severe that Plaintiff was forced to vacate the home. (*Id.*, Ex. A at 9.) Plaintiff submitted a claim to Home-Owners Insurance Company for the damage. (*Id.*) On May 10, 2002, Mr. Dwan, an insurance adjuster, and several of his co-workers, including Annie Schember, were at the vacant house conducting an inventory when Ms. Schember saw a glow of light emanating from an attic "crawl space." (Schember Aff., Dkt. 38, Ex. E ¶ 4.)[5] Ms. Schember "became concerned because the light was far too bright to simply be the pilot light of

---

[2]Sergeant Van Buren's last name apparently has changed to "Tuer" since the filing of this case, however, I will continue to refer to her by the name "Van Buren" in order to minimize confusion.

[3]The "Saginaw Police Department" is still listed on the Court's docket as a defendant, but will not be considered separately from Defendant City of Saginaw because the department itself is not a legal entity subject to suit. *See Boykin v. Van Buren Township*, ___ F.3d ___, 2007 WL 750545 (6th Cir. March 14, 2007) (slip op.) ("under Michigan law, Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit.").

[4]Plaintiff filed at least one other lawsuit based on the same set of facts, case number 04-CV-10359, which is closed.

[5]The attic "crawl space" was described by Mr. Dwan as an unfinished area on the third floor of the house behind a small wall, which Dwan refers to in his deposition as "an e-wall." (Dwan Dep., Dkt. 38, Ex. A at 19.) It is the Court's belief that Mr. Dwan actually was saying " knee wall," which is a "short interior wall built beneath the roof rafters." (*See* <http://www.thisoldhouse.com/toh/knowhow/adding/article/1,16417,198322,00.html> as viewed on March 29, 2007.)

2

the water heater which was located in the crawl space." (*Id.* ¶ 5.) Ms. Schember "crawled into the crawl space and around the water heater, [o]n the other side of the water heater, [she] saw several burning candles with small foil packets and pieces of paper nearby." (*Id.* ¶ 6.) Ms. Schember then "immediately called for the adjuster in charge of the claim, Mike Dwan, who went into the crawl space and then asked us to leave the building." (*Id.* ¶ 7.)

> Mr. Dwan testified in his deposition that after being alerted by Ms. Schember he
>
> went upstairs and saw a fire behind an e-wall so we - - I evacuated everyone from the building and called my boss to find out what we should do, and [we] decided we should call the police. The house was supposedly vacant, there shouldn't have been a fire and there was, so we called them and they came out and extinguished the fire."

(Dwan Dep., Dkt. 38, Ex. A at 9.)  When asked why he specifically called Detective Mark Lively of the City of Saginaw Police Department instead of calling the fire department or Plaintiff Timothy Holden, he explained that Detective Lively's name and number were given to him by his boss to call because Lively had already been involved in the vandalism investigation.  (*Id.* at 13.)

Defendant Lively states in his affidavit that, after Mr. Dwan's call, he dispatched a patrol car to the premises.  (Lively Aff., Dkt. 38, Ex. B ¶ 4.)  When Defendant Officer Robinson arrived at the home, Mr. Dwan was out on the front lawn waiting.  Robinson states in his affidavit that he "met with Mr. Dwan who said that he had something to show me," that he "was taken to the crawl space of the home by Mr. Dwan and/or other persons who were working with him in the home," and that in the crawl space he "found approximately 10 votive candles burning [and] [u]nder each candle was a slip of paper with writing."  (Robinson Aff., Dkt. 38, Ex. C ¶¶ 3-5.)  Robinson "read the slips of paper [and found that] [t]he writings named both Sgt. Mark Lively and Det. Bob Ruth of the Saginaw Police Department."  (Robinson Supp. Aff., Dkt. 40, Ex. A ¶ 3.)  Robinson states that, "[b]ased on the information [he] read on the slips of paper and their location, [he] was

concerned that the slips may be evidence of possible threats against Sgt. Lively and Det. Ruth."
(*Id.* ¶ 4.)  With regard to his entry into the building, Robinson states that he "had been directed to
do so by Sgt. Mark Lively and [he] believ[ed] that Mr. Dwan had the authority to consent to [his]
entry of and search of the premises."  (Dkt. 38, Ex. C ¶ 7.)

Defendant Van Buren recalls that she was dispatched to Plaintiff's house "at the request of
Officer James Robinson" and that "when [she] arrived, Officer Robinson showed her to the crawl
space of the home where there were a number of lit candles in close proximity to the water heater."
(Van Buren Aff., Dkt. 38, Ex. D ¶¶ 2-3.)  Van Buren states that she was sent to Plaintiff's house
"for the purpose of taking photographs of the candles" and that, after she took the photographs,
"Officer Robinson extinguished the fire and removed the candles at the direction of Sgt. Lively."
(*Id.* ¶¶ 4-5.)  Defendant Van Buren states that she had "no involvement in the original entry into
the home" and that "the home had considerable damage from vandalism and, to [her]
understanding, was not inhabited at the time."  (*Id.* ¶¶ 6-7.)

Defendant Lively acknowledges that he instructed the officers to seize the candles and
papers.  In his affidavit he explains that he received a telephone call from Defendant Officers Van
Buren and Robinson

> advising [him] that based on the information provided by Mr. Dwan and/or persons
> who were working with him at the premises, a group of tall votive-type candles had
> been discovered burning in an attic crawl space area in close proximity to a hot
> water heater.  The candles were sitting on top of slips of paper with writing on them.

(Lively Aff. ¶ 5.)  Defendant Lively states that, "because of the danger of a fire or explosion in the
area of these materials, I directed that the materials be seized."  (*Id.* ¶ 6.)  Defendant Robinson also
states that he conferred with Defendant Van Buren, who was shift sergeant, and, after so doing,
he "seized the slips of paper at [her] direction."  (Robinson Aff. ¶ 6.)

4

Following these occurrences, it appears that Plaintiff was arrested and incarcerated in Saginaw County for charges sounding in arson and fraud. (Dkt. 1 ¶ 12.) None of the parties has asserted that these charges were filed as a result of the search of his vandalized home or the seizure of these items.

In his amended complaint, Plaintiff alleges that his rights under the Fourth and Fifth Amendments to the U.S. Constitution were violated by the warrantless entry and seizure of the candles and papers:

> On May 10, 2002, defendant Lively and defendant Mallette ordered City of Saginaw Police Officers defendant James Robertson and defendant Detective Sergeant Van Buren to enter and search Plaintiffs' residence at 114 N. Granger, Saginaw, Michigan without a valid warrant and absent legally sufficient probable cause in violation of plaintiffs' clearly established Fourth Amendment rights.
>
> That the warrantless entry and search and seizure ordered by defendant Lively and defendant Mallette resulted in unlawful and unconstitutional search and seizure and so called, "fruits of the poisonous tree" evidence, and included unlawful seizure of Plaintiff Timothy Holden's religious prayer sheets, resulting in unwarranted, unjustified interference with both Plaintiffs' 5th Amendment personal liberty rights of freedom of expressive association and freedom of intimate familial association.

(Am. Compl., Dkt. 31, ¶¶ 7-8.) Plaintiff goes on to further assert:

> That defendant Detective Sergeant Lively, defendant Detective Sergeant Van Buren, defendant Officer James Robinson, and defendant Lieutenant Mallette's conduct was unreasonable under the circumstances and constituted an unreasonable search and seizure which amounted to an abuse of lawful authority under color of law in violation of 42 USC section 1983, and in violation of the Fourth Amendment and Fifth Amendment to the Constitution of the United States and constituted gross negligence, pursuant to this court's pendant jurisdiction as more fully set forth herein.
>
> As a result of the unlawful and unconstitutional actions and inactions of defendant Detective Sergeant Lively, defendant Detective Sergeant Van Buren, defendant Officer James Robinson, and defendant Lieutenant Mallette and defendant City of Saginaw, inasmuch as defendant Lively is the policy making officer in charge for defendant City of Saginaw regarding the complained of events, Plaintiffs' sustained damages including, but not limited to: unconstitutional imprisonment, humiliation, embarrassment, anxiety, mental distress, and legal defense expense.

5

(*Id.* ¶¶ 10-11.)  The amended complaint contains two causes of action:  deprivation of civil rights (Count I) and gross negligence (Count II).  (*Id.* ¶¶ 12-22.)

### C.    Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp.*

6

*Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D.    Count I:  Deprivation of Civil Rights

Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997); *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980). In this case, Plaintiff alleges the following violations of his federal constitutional rights: (1) Fourth Amendment right to be free from unreasonable searches and seizures and (2) Fifth Amendment freedom of expressive association and intimate familial association. Generally, to survive summary judgment in a § 1983 action, the plaintiff must demonstrate a genuine issue of material fact as to two elements: (1) the challenged conduct was committed by a person acting under the color of state law and (2) the conduct caused a deprivation of the plaintiff's rights or privileges protected by the laws or Constitution of the United States. *Parratt v. Taylor*, 451 U.S.

7

527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).

### 1.      Fifth Amendment Claims

Defendants assert that Plaintiff's claims that his Fifth Amendment rights to expressive association and familial association were violated must fail because they are wholly conclusory. I note that Plaintiff has recently added "religious observance," "pursuit of happiness and liberty" and the "privacies of life" to the list of potential violations under the Fifth Amendment heading. (Dkt. 39 at 3.)  These phrases, however, are not connected to any supporting factual averments. The Sixth Circuit has long recognized that "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" under § 1983.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  I suggest that Plaintiff has failed to properly plead or support any alleged Fifth Amendment violation, and therefore there is no need to continue with the qualified immunity analysis with regard to this claim because Defendants are clearly entitled to summary judgment.

### 2.      Fourth Amendment Claims

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

### a.      Defendant Mallette

Plaintiff alleges that "Defendant Lively and Defendant Mallette ordered City of Saginaw Police Officers Defendant James Robertson and Defendant Detective Sergeant Van Buren to enter and search Plaintiffs' residence at 114 N. Granger, Saginaw, Michigan without a valid warrant and

absent legally sufficient probable cause in violation of Plaintiffs' clearly established Fourth Amendment rights." (Am. Compl., Dkt. 31 ¶ 7.) Defendant Lively, however, avers that he has "reviewed all police reports relating [to the instant case]. . . and the name of Lieutenant Mallette does not appear in any of the reports. On information and belief, Lieutenant Mallette had no involvement in any decisions to have Saginaw Police Department personnel enter the above premises on May 10, 2002." (Lively Aff., Dkt. 38, Ex. B ¶ 7.) Plaintiff has not come forward with any evidence to contest this statement. Therefore, I suggest that summary judgment is appropriate with respect to Defendant Mallette because there is no evidence giving rise to a disputed issue of fact as to whether he was involved in the alleged civil rights violations. *Liberty Lobby, supra.*

### b.   Defendants Lively, Van Buren, and Robinson

Defendants Lively, Van Buren, and Robinson move for summary judgment on the ground that qualified immunity shields them from liability and suit. They argue that they were acting in their community caretaker role, or, in the alternative, that there was no "search" of Plaintiff's house and finally, even if their was a search, the private search doctrine would exculpate Defendants. Defendants further argue that their conduct did not violate the Fourth Amendment because exigent circumstances justified entry or because Mike Dwan had apparent authority to consent to the Defendants' entry into the house. Defendant Robinson specifically contends that the slips of paper under the votive candles were threatening and in plain view.

The U.S. Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is

that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to:

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.

*Greene*, 310 F.3d at 894.

The clearly established right must be particularized such that a "reasonable official in the defendant's position knows that her actions violate that right." *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 505 (6th Cir. 2005). In addition, in the context of a dispositive motion, the next determination is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).[6] The court views the facts in the light most favorable to the plaintiff but must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005).

###     i.     Qualified Immunity – Warrantless Entry Claim

Plaintiff here alleges that Defendants Robinson and Van Buren's warrantless entry, as authorized by Defendant Lively, was unreasonable and therefore in violation of the Fourth Amendment. "When a search requires a warrant, the failure to satisfy the Warrant Clause makes the search 'presumptively,' if not per se, 'unreasonable.'" *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms,* 452 F.3d 433, 445 (6th Cir. 2006) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). *See also Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). In light of this statement of the law, it seems clear that "a violation could be made out on a favorable view of the parties'

---

[6]Other circuits, such as the First Circuit, employ a similar three-step test: "'(I) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.'" *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)).

submissions," *Greene*, *supra*, and therefore the Court must move on to the second step in the qualified immunity analysis, "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams*, *supra*, 186 F.3d at 691.

Defendants counter that entry into the home and any search conducted while in the home was not only reasonable but justified under two exceptions to the warrant requirement: exigent circumstances and consent via the apparent authority of Mr. Dwan.  The consent exception provides that "[c]onsent from an individual whose property is to be searched or from a third party who possesses common authority over the premises validates a search that would otherwise be considered unreasonable and unconstitutional." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003).  I suggest, however, that the evidence fails to support the consent theory because Mr. Dwan stated that when the police arrived he was out on the front lawn, the house was open, and he neither gave permission for the officers to go in nor let them in himself.  (Dwan Dep., Dkt. 38, Ex. A at 14, 29.)  Silence or passivity cannot form the basis for consent to enter a residence.  *See Roe v. Texas Dep't of Protective & Regulatory Services*, 299 F.3d 395, 402 (5th Cir. 2002). Accordingly, I suggest that the evidence fails to establish that the consent exception to the warrant requirement made the entry into the home reasonable.

Exigent circumstances can also justify a warrantless entry into a home when any one of the following four situations are present:  (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; or (4) a risk of danger to the police or others.  *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996).  Courts are to consider "the

totality of the circumstances and the inherent necessities of the situation at the time." *United States v. Plavcak*, 411 F.3d 655, 663 (6th Cir. 2005).

I suggest that, as to whether the necessities of the situation rendered the warrantless entry reasonable under the exigent circumstances doctrine, the facts presented raise a close issue. At one end of the spectrum, a "burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable,'" *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). Here, however, the building was not burning although something was burning in the building. Although Ms. Schember stated that she "saw several burning candles," Mr. Dwan stated that he did not "learn" that the "fire" consisted of votive candles until after the police informed him. (Dwan Dep., Dkt. 38, Ex. E ¶ 6.) Under either version, no one contended that the flame or flames grew significantly in size or intensity during the time the insurance adjusters were in the home. However, they were in proximity to the water heater, which could increase the potential for a destructive fire. Nonetheless, I conclude that the instant facts are rather far removed from the obvious exigency of a "house on fire."

At the other end of the spectrum are situations that involve no danger to officers or to others. The Sixth Circuit has stated that "[p]recedent is clear that the 'risk of danger' exigency applies only to situations involving the 'need to preserve life or avoid serious injury either of police officers themselves or of others'" rather than "merely the risk of danger to property." *United States v. Williams*, 354 F.3d 497, 505 (6th Cir. 2003) (holding that warrantless entry to prevent water damage to home violated the Fourth Amendment). However, the precedent in this area is not clear.

The Sixth Circuit has expressed considerable flexibility in applying the exigency question to individual factual scenarios:

> Therefore, if the situation dictates, we are not precluded from fashioning a new exigency that justifies the warrantless entry into Defendant's home. Specifically, under the particular facts of this case, we must consider whether an ongoing and highly intrusive breach of a neighborhood's peace in the middle of the night constitutes 'exigent circumstances," and therefore justifies a warrantless entry.

*United States v. Rohrig*, 98 F.3d 1506, 1519 (6th Cir. 1996). In *Rohrig*, the officers were responding to calls from neighbors complaining about music emanating from defendant's home that was so loud it could be heard for at least a block away from the home. *Id.* at 1521. When the officers arrived at the scene, "they were confronted by an irate group of pajama-clad neighbors." *Id.* The officers shouted and banged on the door, but no one came to the door so the officers proceeded to enter the home. The court determined:

> Had the officers attempted to secure a warrant, it is clear that the aural assault emanating from Defendant's home would have continued unabated for a significant period of time . . . [and] if we insist on holding to the warrant requirement . . . we in effect tell Defendant's neighbors that 'mere' loud and disruptive noise in the middle of the night does not pose 'enough' of an emergency to warrant an immediate response, perhaps because such a situation 'only' threatens the neighbors' tranquility rather than their lives or property. We doubt that this would comport with the neighbors' understanding of 'reasonableness.' Further, because nothing in the Fourth Amendment requires us to set aside our common sense, we decline to read that Amendment's 'reasonableness' and warrant requirements as authorizing timely governmental responses only in cases involving life-threatening danger.

*Rohrig*, 98 F.3d 1521.

The *Rohrig* court recognized that *Welsh v. Wisconsin*, 466 U.S. 740, 742-43, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), requires consideration of the seriousness of the underlying offense in weighing the government's interest in comparison to the intrusion against the individual. However, it went on to conclude that the "*Welsh* analysis has less relevance as one moves away from traditional law enforcement functions and toward what the Supreme Court has referred to as the community caretaking functions." *Rohrig,* 98 F.3d at 1521 (quotations omitted) (citing *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)).

14

In this case, Defendants have argued that their actions are justified under the "community caretaking function" recognized in *Cady*. (Dkt. 38 at 10.)[7] The Court in *Rohrig* applied the *Cady* analysis and found that entry into the defendant's home to locate and abate the noise nuisance and restore the neighbor's peaceful enjoyment of their homes was "sufficiently compelling" to justify the warrantless intrusion. *Rohrig,* 98 F.3d at 1522.[8]

I suggest the facts of the instant case are comparable to those of *Rohrig, supra*. Defendants were informed by Mr. Dwan that there was a "fire" or that votive candles were burning near a hot water heater in a vacant home and that Mr. Dwan viewed the situation as serious enough to evacuate the building. (Dkt. 38, Ex. E ¶¶ 5, 7-8; Ex. A at 9-11; Ex. B ¶ 6.) Defendant Lively "directed that the materials be seized" because of "the danger of a fire or explosion in the area" around the hot water heater. (Dkt. 38, Ex. B ¶ 6.) The potential danger in the instant case arguably outweighs the danger posed by noise in *Rohrig, supra*. Thus, I suggest that the exigent circumstances exception and community caretaker function analysis as interpreted by the Sixth Circuit entitles Defendants to qualified immunity for their warrantless entry into the vacant home because it cannot be said that what the officials did was objectively unreasonable in light of the existing precedent. *See Williams*, *supra*, 186 F.3d at 691.[9]

---

[7]Other Circuits have held that because the Court in *Cady* stressed the "distinction between motor vehicles and dwelling places," its application is to be limited to searches of vehicles. *See, e.g., United States v. Bute*, 43 F.3d 531, 535 (10th Cir. 1994); *United States v. Erickson*, 991 F.2d 529, 531(9th Cir. 1993); *United States v. Pichany*, 687 F.2d 204, 208-09 (7th Cir. 1982). In *Rohrig*, however, the Sixth Circuit draws no distinction between vehicles and residences in applying the *Cady* community caretaker analysis.

[8]While looking for the source of the noise, the officers properly seized marijuana plants that were in plain view. *Rohrig*, 98 F.3d at 1525.

[9]Defendants have also argued that the warrantless entry was justified because it was a "private search" commenced by the insurance adjuster, Mr. Dwan, analogous to that in *United States v. Jacobsen*, 466 U.S. 109, 114-15, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). (Dkt. 38 at 12.) However, the Sixth Circuit has unequivocally stated that it "is unwilling to extend *Jacobsen* to cases involving private residences." *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997); *see also United States v. Williams*, 354 F.3d 497, 510 (6th Cir. 2003). Regardless, I suggest that Mr. Dwan did not conduct any search of the home. Although he may have looked into the crawl space area and

15

ii.    **Qualified Immunity – Search & Seizure Claim**

The scope of the search conducted is determined by the exigency and the "plain view" doctrine allows the seizure of items discovered in plain view during an otherwise legal search. *Arizona v. Hicks*, 480 U.S. 321, 325-6, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987) (stereo was not properly subject to plain view seizure where incriminating nature was not revealed until after officers moved stereo, copied the serial numbers and checked the status of those numbers). The Supreme Court has instructed that

> [t]he 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, nether its observation nor its seizure would involve any invasion of privacy [but] a seizure of the article, however, would obviously invade the owner's possessory interest. If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

*Horton v. California*, 496 U.S. 128, 134, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). A plain view seizure therefore must be supported by probable cause to associate the item with criminal activity. *Hicks*, 480 U.S. at 326-27. The Sixth Circuit requires that four factors be met before the plain view doctrine may be applied:  the item must have been (1) in plain view; (2) of a character that is immediately incriminating, or, stated another way, of a character whose incriminating nature is immediately apparent; (3) found pursuant to a lawful search; and (4) obtained by lawful access. *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997). The immediately-incriminating requirement prevents the plain view exception from becoming a license for "a general exploratory search from one object to another until something incriminating at last emerges." *Horton*, 496 U.S.

---

alerted the police after he saw the "fire," he stated that he called his superior and evacuated the building.  (Dkt. 38, Ex. A at 9-11.)  Therefore, I suggest that the instant case rises or falls on the conduct of the officers rather than of Mr. Dwan.

at 136. The Sixth Circuit has also established three factors to be analyzed to assess the "immediately apparent" requirement: (1) the nexus between the seized object and the items particularized in the warrant; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to associate it with criminal activity; and (3) whether probable cause is the direct result of the executing officer's instantaneous sensory perceptions. *United States v. Beal*, 810 F.2d 574, 576-77 (6th Cir. 1987).

In *Calloway,* the officers executed a search warrant targeted at finding documents listing the names of the flight crew members that the defendant had attacked. During the search, the officers came upon and seized a list of the weapons used by the defendants, bank receipts, the defendant's will, and a power of attorney document. *Calloway*, 116 F.3d at 1133. The court found that the seizure of these additional items was justified under the plain view doctrine. The court noted that because the warrant directed the officers to look for documents, the "agents had to examine such documents as they came across and the seized documents were obviously in plain view of the agents responsible for examining them." *Id.* The court found that the incriminating nature of the documents seized was immediately apparent because the agents knew that weapons were used in the attack, and the agents knew defendant had changed the beneficiary on his life insurance so they were not unreasonable in concluding that the defendant may have completed other financial and legal arrangements in preparation for the attack. *Id.*

Unlike the officers in *Calloway*, however, in this case, the defendants were not executing a warrant that allowed them to read papers of any kind, they were responding to a potential fire hazard in a vacant house. Thus, I suggest that the instant exigency allowed them to extinguish the fire or candles, but to do no more before first securing a warrant.

17

By contrast, in *Beal, supra*, a lawful search turned up suspiciously heavy pens that turned out to be pen guns but because the true function of these "intrinsically innocent" devices could not be determined until the pens were disassembled, the court held that probable cause was not immediately apparent from the officer's initial sensory perceptions. *Beal*, 810 F.2d at 577.

In the instant case, Defendant Robinson "found approximately 10 votive candles burning [and [u]nder each candle was a slip of paper with writing." He then moved the candles and read the slips of papers (which at times in the motion papers are referred to as prayer sheets) and discovered that they named Defendant Lively and Detective Bob Ruth. (Dkt. 40, Ex. A ¶¶ 3-4.) Defendant Robinson became "concerned that the slips may be evidence of possible threats against Sgt. Lively and Det. Ruth." (*Id.* ¶ 4.) After conferring with Defendant Van Buren, Defendant Robinson "seized the slips of paper at [her] direction." (*Id.*; Dkt. 38, Ex. C ¶ 6.)

As was the case in *Beal*, I suggest that the alleged threatening nature of the "intrinsically innocent" pieces of paper could not be determined until the candles were moved and the papers were read. *See United States v. Byrd*, 211 F.3d 1270, 2000 WL 491511, at *3 (6th Cir. April 18, 2000) ("when an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating") (quoted with approval in *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002)). Thus, I suggest that the papers cannot be considered "immediately incriminating."

The instant facts, however, are also similar to those of *United States v. Silva*, 714 F. Supp. 693 (S.D.N.Y. 1989). In *Silva*, after a local bank robbery, an officer was executing a search warrant that authorized the seizure of weapons and clothing when he came across a bag that contained a pair of glasses and a yellow spiral notebook. *Id.* at 694. The officer "leafed through the notebook page by page to look for money" and in so doing, found a five-page letter written by

the defendant to "Dearest Samantha." *Id.* The officer read the letter and discovered that it was evidence of the crime committed because it referred to doing "certain things which aren't very legal" and stated how he would "never allow [his] family to become street people . . . as long as [he] ha[d] a gun and there [was] a bank." *Id.* The court noted that "until the agent read the third page of the letter there was no probable cause to believe the notebook contained evidence of a crime [because] [t]he notebook had no markings on the cover and nothing to suggest its contents." *Id.* at 696. The court contrasted the situation where an officer executing a search warrant involving drugs finds a notebook among the drug paraphernalia because officers "would know that drug sales are frequently recorded in a ledger or notebook." *Id.* The court held that no exception to the warrant requirement "justifies opening the notebook" and that the plain view doctrine could not justify the seizure of the letter. *Id.* at 697. Analogously, here, although Defendant Robinson was justified in extinguishing the candles, I suggest that nothing justified moving the candles or reading of the slips of paper. It was not until the papers were read that any incriminating nature was revealed. The papers were not situated near other evidence of a crime, such as drugs, which would allow them to justifiably be linked to criminal activity. *Id.*

Finally, it should be noted that "the police are not authorized to seize odd items." *U.S. v. McLevain*, 310 F.3d 434, 442 (6th Cir. 2002). In *McLevain*, a "cut cigarette filter" and a "prescription bottle with fluid in it" were observed in plain view while executing a search warrant for drugs, so the officer took photos of the filter and prescription bottle and then applied for and received a second warrant based on that information. The execution of the second warrant produced contraband. *Id.* at 438. The response by the officers in *McLevain*, I suggest, describes what I conclude would have been the appropriate actions by the officers in this case. Although the items were "out of the ordinary," their incriminating nature was not immediately apparent and thus,

they were not properly seized under the plain view doctrine. *Id.* at 442. Similarly, here, the slips of paper or prayer sheets under lit votive candles are certainly out of the ordinary and rather intriguing, but any incriminating nature of the papers was not immediately apparent.

Accordingly, I suggest that Defendant Robinson's reading of the slips of paper and seizure of the items pursuant to the direction of Defendant Lively and possibly Defendant Van Buren,[10] was a violation of Plaintiff's Fourth Amendment rights because these actions did not fall within the requirements of the plain view doctrine. Thus, the Court must move on to the second step in the qualified immunity analysis and determine whether the right was clearly established.

Although the general principles have not changed since the incident at issue in this case, I nevertheless suggest that the law regarding both exigent circumstances and plain view seizures is so fact-driven and characterized by nuances that it cannot in this case be considered clearly established in a particularized sense. I therefore suggest that Defendants' actions, in light of case law, were not objectively unreasonable. Here, Defendant Robinson was justified, by exigency, in extinguishing the candles. He could presumably have done so without moving the candles, but instead he picked up at least one and read the exposed slips of paper, only to discover his fellow officers' names written there. Although this difference in approach is constitutionally significant under the plain view doctrine, it is, I suggest, of such minuscule import as a practical matter that it borders on legal hair-splitting, which neither the Constitution nor the courts ask of police officers in the field. Indeed, courts have recognized that even where a right is clearly established, a defendant may still establish immunity by "'showing that reasonable persons in their position

---

[10]Defendant Van Buren suggests that she should be dismissed because her role was limited to taking photographs of the scene. However, although the evidence reveals that she did not have any role in the initial entry to the home, it also indicates that she conferred with Defendant Robinson and that he "seized the slips of paper at [her] direction." (Dkt. 40, Ex. A ¶ 4; Dkt. 38, Ex. C ¶ 6; Ex. D ¶¶ 2-7.)

would not have understood that their conduct was within the scope of the established prohibition.'" *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)).

Consequently, I suggest that the law as applied to these facts is sufficiently unclear and subject to finesse that Defendants' conduct cannot be considered unreasonable, and thus I suggest that they are entitled to qualified immunity with regard to the claims of unlawful search and seizure.

### c.   Defendant City of Saginaw

Plaintiff avers that the alleged unconstitutional actions of the individual officers were taken "as a matter of City of Saginaw policy." (Am. Compl., Dkt. 31 ¶ 14.) Under § 1983, Plaintiff must show that the supervisory official "condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, in order to state a claim against a city under § 1983, a plaintiff must show that his injury was caused by an unconstitutional custom or policy of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences . . . simple or even heightened negligence will not suffice." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 103 L. Ed. 2d 412 (1989) (internal citations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at

410.  Deliberate indifference can be proven by "showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond."  *Stemler*, 126 F.3d at 865.

Plaintiff has not come forward with any evidence of deliberate indifference on the part of the City of Saginaw, and his conclusory allegation in his amended complaint is inadequate to survive summary judgment.  Accordingly, I suggest that the Defendant City of Saginaw is entitled to summary judgment.  *Liberty Lobby, supra*.

### E.    Count II – Gross Negligence

Under this Count, Plaintiff avers the same facts and legal conclusions as stated in the § 1983 claim under Count I.  (Dkt. 31, ¶¶ 18-22.)  "Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'"  *Lewellen v. Metropolitan Gov't of Nashville,* 34 F.3d 345, 351 (6th Cir. 1994) (internal citation omitted).  Plaintiff did not allege any gross negligence claim under Michigan law.  Consequently, I suggest that this claim be dismissed pursuant to the instant motion for summary judgment.

### F.    Conclusion

For the reasons stated above, I suggest that summary judgment in favor of Defendants be granted because Plaintiff has come forward with no evidence to support the involvement of Defendant Mallette, no evidence to support his allegation of an unconstitutional policy or custom on the part of the City of Saginaw, and Defendants Lively, Robinson, and Van Buren are entitled to qualified immunity since the constitutional rights said to have been violated were not, on the facts presented, clearly established.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


    s/ *Charles E. Binder*
CHARLES E. BINDER
Dated: March 30, 2007                                            United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on John Decker and Steven Finegood, and served on U.S. District Judge Ludington in the traditional manner.


Date:  March 30, 2007                     By____s/Patricia T. Morris_____
                                                                  Law Clerk to Magistrate Judge Binder